The next case is Carter v. Syracuse School District. Good morning, my name is A.J. Bosman. I am here on behalf of the Plaintiff Appellant Corinne Carter Brown. Sexism and racism by their very nature are hostile. Recipients are made to feel as though they are unwelcome, ostracized, and not a team player. The court below, upon remand by this court, made a finding that the plaintiff had failed to prove a crime-official case, had failed to properly serve a notice of claim, and dismissed and granted summary judgment a second time. With respect to the first point, the Education Law 3813 subsection 1 was complied with in this case for the purposes of the Human Rights Law. And we can tell that by virtue of the Board of Education. You seem to make this distinction between 2508 and 2566, and the cases under 2508 that have spelled, but the language is the same. I've looked at the language, it's exactly the same. Under 2508 it says that there's a seat on the board and the right to speak on all matters before the board and not vote, and 2566 has the exact same language, so I'm not sure what the distinction is. I think that the 2566, if I'm not mistaken, sets forth that the superintendent is the CEO of the board. The 2508 says the superintendent is the CEO of the district. I believe that that's the and does not reference the Board of Education. You're saying the seat on the board is not, they both have the seat on the board, but you're saying the key is that whether you're CEO or not? That's correct. And also, secondarily, the argument that the notice of claim was not served or was not effective was waived by virtue of the 50H examination of my client. Can I ask a question also about the adverse action issue? I know you're arguing that many of these things are adverse actions because they're beyond just the negative evaluation you put on the assistance plan, that not being part of the master teacher's program, not being moved up to the 11th grade, not being able to teach advanced English, but I just want, for the master teacher's program, your client seems to see that there's a monetary component to that, which would obviously make it adverse, independent of whether or not it's a prestigious position. It seems like she's the only, it's just her testimony that you can get paid for that. Can you elaborate on what that's based on? You would think that would be something that could be developed more in the record than just her saying you can get paid for that. Right. If you take a look at the record, appendix page 878, the principal, Williams, identified that they look for quote, master teachers for special assignment. And I think if you go back to the contract itself, it identifies special assignments as being, you can get additional remuneration as a result of those special assignments. So I admit that she did not elaborate on that. That wasn't further developed, but that was not the focus as I understood it from the court. The court merely made a statement that her statement that the master teacher program would deprive her of professional development was not sufficient to create an issue of fact for purposes of the case. And why is not getting moved up to the 11th grade adverse? It's because all the other teachers get moved up and it's, I guess more, it's her career advancement suffers. Explain to me why not getting moved up to the 11th grade? Well, reputationally, I'm sorry. Okay. Part of the structure of the school was to have the teacher move with the students in order to this Institute for technology as a teacher who was not advanced. And in fact, put on this assistance plan that would single her out. It represents disparate treatment on the basis of her race and her gender. And there is no evidence that the defendants have made that not moving her up with the other teachers was not based upon the sham evaluation and this complaints that she made to Mr. Dittman and others about discrimination on the basis of her race. The assistance plan is correct. She said that it was the first step in the course of discipline at a 682. The assistance plan is the initial level to resolve the concern before it becomes a deficiency and improvement of the performance. Do you agree that there was no loss of pay or benefits? There was nothing tangible. Do you agree with that in terms of whether the moving up to the 11th grade, these other things? I agree that that year that she was moved, that she was kept in the same level grade, that that was not a decrease in her salary. I mean, it certainly is arguably poor treatment, but does it rise to the level of an adverse employment action for purposes of the employment discrimination laws? I believe that it does, particularly when it's considered in light of and in conjunction with the other conduct that she was suffering, the hostile work environment, the treatment that she was receiving, the statements that being put with a cart and having to go class to class and having her classroom taken away from her, essentially. I mean, that's one of the difficulties here. There was evidence that most teachers did not have their own classroom, that most teachers had to move from one room to another. I think that creates an issue of fact because that is a statement by an administrator and you correct on that. I think crediting the defendants over the plaintiff flips the burden on the summary judgment motion. Yeah, if you credit one person over another, that's true. She said she lost her classroom. She doesn't say that she was the only one to lose her classroom. She doesn't say that everyone else had their own classroom. So, I'm not sure that that creates an issue of fact for trial. I think when it's considered in light of the other evidence in the case, including the fact that two white teachers who were noted to have deficiencies were not put on improvement plans as set forth in Exhibits 14 and 15 at A866-867 indicates that the plaintiff was treated differently on the basis of her race. Additionally, part of the issue here is the response that the school district had to the complaints of discrimination, including the Superintendent Longard's statement to her that she was not a team player, that he knew what she meant by lynching. There was no investigation of her complaints and the district did not. With the Chief's permission, if I could just ask you about the gender part of the case. I'm having a hard time obviously understanding the allegations with respect to race discrimination, but it doesn't seem like these things that you're citing, you know, moving up to the 11th grade, the Master Teamster program, the classrooms, it seems like there were female teachers who were receiving all those benefits, right? So, what's the gender part of the case? I think those statements come in when she was told by Mr. Frazier and the other statement to her that she's a tall, well-educated black woman. So, the two were used together to describe her and that they were intimidated by her because she was a well-educated black woman. So, I think that that's where the gender discrimination comes in. I can't point to any of these adverse actions as where other women didn't also get the benefit that she claims she should have gotten. She was replaced in her English teaching capacity by James Rusty, a white male who did not have teaching credentials, and then and also her students were taken out of her classroom upon her complaint about the treatment that she was receiving by the individuals coming in and interrupting her classroom. The district court's determination, a factual determination in fact, that the other affirmations by Moore and Trania were insufficient in evidence as to a custom policy and practice, I think, are belied too by the fact that the district did not have a written policy and if I could just address one moment the issue of the fact that the teachers with deficiencies were not placed on improvement plans, but the plaintiff was. If you look at the timeline, so that assistance plan that she was placed on was in the spring of 2009. She had made her claim about defendants saying that she had failed to submit a written or formal transfer request. That was a new argument by the defendants. They sought to transfer her to the eighth grade assignment and she did not submit a written request before that. A-742 of the record indicates that employees may file a written statement of interest to transfer. It doesn't require it. It's not mandatory. I see I've gone over. Thank you, Ms. Bosman. We'll hear from the appellee. May it please the court, I am Miles Law over the Ferrara Law Firm representing the defendants in this case. The lower court dismissed the plaintiff's claims primarily because of the and I want to address first the discrimination claims under Title VII, the human rights law section 1983. The foundation of those claims is the plaintiff's March 2009 performance evaluation. She contends that the evaluation which was performed by defendants was tainted by racial gender racial and gender bias and that the alleged consequences of the evaluation are the result. Mr. Lawler, you're coming a little in and out of the audio so you may want to just make sure you're standing still and close to the microphone. Very good, Your Honor. The contention is that the evaluation and that all the consequences of the were therefore also biased. However, if the evaluation not tainted by discrimination then the consequences of that evaluation were also free of bias, absent some independent evidence of discrimination with regard to a specific consequence. However, in this case, let me just let me just ask you about the adverse action issue. Our case is saying that obviously a negative evaluation is not enough but if it has, if that's your opportunity for advancement or significantly reduces your responsibilities, it becomes adverse. Her argument is, and I want you to focus on three, the master teacher's plan, the moving up to the 11th grade, and not being able to teach advanced English were all as a result of her being on the assistance plan. And in fact, in your brief, two of those you concede were because, in part at least, she was on an assistance plan and therefore not eligible. So why isn't that enough to cross the There simply is no program. There's evidence of an apprentice program where you train other teachers, right? You're saying that there's no program where some teachers... There is no master teacher program. The reference that the plaintiff's attorney referred to is actually a conversation that was recorded in the human rights proceeding. It's taken completely out of context. The He happened to use a term which now seized on to claim there is a master program. But importantly, her deposition, plaintiff admitted she didn't know whether the program was a district program, she didn't know whether she was going to get paid by the district for it, and she had no documents that she could point to that even evidenced the establishment of the program. She signed a declaration, a sworn declaration, saying Carter told her she was ineligible for this, whatever you call it, the training of other teachers because she was on the assistance plan. So you're saying we should ignore that? No, your honor. I'm saying that I know that there was a reference in the plaintiff's papers about having that there was a master teacher program and she's not eligible for it. However, the reference there doesn't attribute that statement to anybody in particular. She told Carter on page 175 of the appendix in her declaration, I mean, excuse me, Stewart, Stewart told her, Stewart, she told her she was ineligible. But if you look at the reference to the record there, the statement is not attributed to Miss Stewart. It's not. What about the 11th grade moving up? You can see on page 29 that was because she was on an assistance plan, right? Well, she was on an assistance plan. She had never taught at the high school level until a year or two before. Not moving up to the 11th grade left her in the same position she taught 10th grade. She got the same benefits. There was no loss of income, opportunity, or anything else. And this claim is based on the false premise that there's something in terms of grades as you go up. Did every other teacher get moved up? Most of them did. Yes, I believe. Okay. And she also said in her 2014 affirmation that as a result of that, she had, she had the students that were most at risk academically and behaviorally. So she's suggesting that there's not just the prestige issue, but that she's actually dealing with a harder situation than the other teachers. I don't think there's any record evidence as to the students in that class. And it still doesn't constitute adverse. Similarly, with regards to the advanced course, either the advanced or the 11th course, they got the same wages. They got the same benefits. There was no material change in terms and conditions of employment. So therefore, it doesn't constitute adverse employment action. All right. Let's assume it's an adverse employment action. Why wouldn't the issues surrounding the evaluation be enough to create an issue of fact that she says that the vice principal, Fraser, was supposed to do it, got switched off. It's the first time she had a negative evaluation. She goes to him and she says, I know he doesn't remember it, that he told her that it's because you're, I don't know the exact word, intelligent black woman. So he tells her that. He's the vice principal of the school and was supposed to do the evaluation. Why isn't that enough for a jury to consider that? Well, first of all, the statement allegedly was made on the evaluation. So it seems to be that, well, if Mr. Fraser says that I'm supposed to do the evaluation, anything that happens afterwards that doesn't involve him has to be destroyed. There's just no evidentiary basis. And in the deposition of the plaintiff, she admitted she really didn't have any specific recollection of what Mr. Fraser was telling her with regards to race. A lot of the plaintiffs claimed in this case were undercut by her own testimony. And that's an important issue in this matter. How long has this litigation been going on? I believe it was sued in 2010, your honor. 2010, 11 years. And have you made efforts to settle? Has there been mediation? There was court-ordered mediation during the district court proceedings, your honor. Those discussions, unfortunately, didn't happen. I mean, if I were in the district court, I would just be banging heads on this case, really. Your honor, if I can address some of the other issues. One thing I'd like to talk about is the notice of claim issue. Why, you know, so it's addressed to the superintendent. Why shouldn't that be sufficient notice to go to the board? Because the case law. I mean, in other words, if they had removed the name, they didn't have the superintendent's name on it and it was just addressed to the board, that would be sufficient notice? The notice has to be delivered to the board of education. I'm sorry, the governing body of the school district. Was this notice sent to the right address? I believe it was sent to the district's address. All right. And did it say it had the superintendent's name and then the body? I believe that's the case, your honor. So if they had simply not put the superintendent's name on, it would be adequate notice? No, your honor, that's not correct. They would have to still physically deliver it to the district. You told me that it was received at the correct address and all I'm hypothesizing is if they had not had the name on it, it would have complied is what I'm asking. Is that so? I don't believe so, your honor. It has to be delivered to the board. It just can't show up in a random envelope. No, no, no, no. I don't know if the envelope is in the record, but presumably it has the name of the body on the envelope and it's sent to the right address and I just don't know why that wouldn't be sufficient notice. Well, New York enforces notice of claim obligations very strenuously. There doesn't give much leeway in terms of who the notice of claim is to be delivered to. In this case, it has to be presented to the governing body and here, as your adversary argues, it makes a difference that Loewengaard was denominated the CEO. Why is that fact just irrelevant? Well, the argument that they're it was never made before proceeding. In fact, it would be our way of this argument by not raising it in the district court and it's never, ever been accepted by any court. It's very strict about the notice of claim service obligations. Is the notice in the record? I'll go take a look at it later. The notice and the envelope, are they in the record? I believe the notice is in the record, your honor. I don't believe the envelope is. Okay, briefly with regard to the other claims, the hostile work environment claims against the individual defendants, Stewart and Loewengaard, nothing has been alleged to them that could create or contribute to a hostile work environment. With regard to claims against the district for classroom grade and level assignments, these are discrete acts that won't support a hostile work environment claim. With regard to the plaintiff's retaliation claim, she contends that she transferred in September of 2010 because of a complaint she filed with the Division of Human Rights in April of 2009. The district court properly found that she had not complied with the transfer process set forth in the collective bargaining agreement. We're not going through that process, but as we point out in our papers, a deposition acknowledged her signature on a transfer request that was used in 2007. Finally, with regard to the practice claims by the defendant, the court found that the defendant Loewengaard, who was the only policymaker who's a defendant in the case, found guilty of any constitutional violation. There's just been no nothing offered in appeal controverting that, so we would think that it was properly dismissed also. And if you have any questions with regards to the specific adverse employment actions that are alleged here, I'd be glad to answer any questions. Thank you, Mr. Lawler. We'll hear a rebuttal. Thank you. The affidavit by Ms. Carter, the record at A899, states unequivocally that none of the other faculty who began teaching at the school at the same time she did had their classrooms taken and given to a new member of the faculty. That is what occurred to her. With respect to the transfer request, this was a new argument that was made at the second summary judgment. At A1500 of the record, Dittman told Stewart, quote, he didn't know if plaintiff would come back to IT or request to go elsewhere. There was no indication and no policy written that mandates. Again, the contract itself says that a teacher may request a transfer. With respect to the policy, part of what's very troubling about the Syracuse City School District, and I asked this over and over again during depositions, when they got complaints of discrimination on the basis of race or gender, what they did was refer it to their attorneys. There is no record. Their policy is to not investigate complaints of discrimination or document even those complaints of discrimination. What that does is it sets up a situation exactly my client found herself in. If you look at record A376, there is no policy to investigate and there's no written sex discrimination policy, although they have one for sex harassment. That sets forth exactly what procedures are to be followed. The school itself had additional complaints of race discrimination, which were acknowledged, and the district court took the affidavits of Traynor, and I believe the name was Moore, and just dismissed them as not relevant or not evidence that the district has a custom policy and practice that results in discrimination on the basis of race. When I asked Mr. Waller about your clients recounting of her conversation with Mr. Fraser, he said that she didn't remember that in the deposition. I guess it was in the declaration, but it was not in the deposition. Is that accurate? It may be, Your Honor. My client, as she stated, was on medication. Mr. Waller did not present her with any documents. She needed to refresh her recollection. The human rights complaint, which is in the record, sets forth these issues and sets forth the she also provided content with respect to what was done with her and what the timing was. We did get some records. We were prevented from getting others, and were not able to do discovery on some of those assignments. I'm sorry. I've lost my train of thought. Article 10 of the contract sets forth that the assignments are made without discrimination on the basis of disability or race. When her doctor wrote the note, she wished to go to another school. What they wanted to do was offer her a position within the IT school, same personnel, same faculty who had moved to a different building. That was not accommodating her at that point. If you take a look at the chronology of events, I think it's important, too. After she made the complaint about the treatment that she was receiving from people disregarding her and treating her badly, the issue about the stereotypical drug car, that all happens in the fall of 2007. Those kids were taken out of her and the chairperson position was taken away from her during that 08 and 09 school year, culminating in this evaluation where Frasier was taken out of the mix. She came in and allegedly evaluated her on that time. The thing that's striking to me in terms of reading the decision by the lower court is that the judge goes out of his way to parse the events instead of looking them as a whole, which we are required to do, of course. Weighing the evidence is a matter for the fact finder at trial, not for the judge. I think that it's clear if you read the decision that that's exactly what was done. Thank you. Thank you, Ms. Bosman. Thank you. We have both of your arguments and we will take the matter under advisement. Thank you for your help this morning.